Edsel C. PETTIFORD, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–9110–CR–770.

Supreme Court of Indiana.

Sept. 9, 1993.

S. Sargent Visher, Choate Visher & Haith, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., for appellee.

GIVAN, Judge.

A jury trial resulted in the conviction of appellant of two counts of Murder. He received a sentence of sixty (60) years on each count, to be served concurrently.

The facts are: The decedents in this case, John W. Fields and DeWitt Everett, were proprietors in what was described as a social club or "after hours joint." They offered drinking, marijuana, and gambling. Ulysses Threats worked there tending bar and selling marijuana. At trial, Threats identified appellant as one of the suppliers of marijuana. Threats testified that on January 12, 1983 he saw appellant and another man come out of the club, get into Fields' car and leave. He stated that he and Della Baxter went into the house and saw Fields sitting in a chair bleeding from his head. Everett was on the floor. Threats called police and waited for them to arrive.

Debra Baxter testified that she had been in an upstairs room at the club when Everett came to the door. He appeared to be scared and told Fields that men were there to collect money for marijuana they had supplied, and they had guns. Fields then went downstairs and Baxter heard the men ask for marijuana and she heard Fields say, "You got my car, man." Fields then returned upstairs to the room and removed a bag of marijuana from the closet and made the comment that "Martha" must have the rest of it. He counted out approximately $800 from his pocket and went downstairs.

Baxter listened again and heard arguing. She then heard shots. She looked out a window and saw her sister and Threats crossing the lot toward the house. When they entered the house, she went downstairs.

Larry Johnson testified he was present with appellant when the shots were fired, and it was appellant who fired the shots that killed both Fields and Everett. On one occasion, Johnson, accompanied by a man named Willie Brown, had delivered marijuana to the club for appellant, and they had taken Fields car "for collateral for money owed for marijuana." On the day of the killings he went with appellant to the club in Fields' car. After arguing, appellant hit Fields, then shot him twice, then shot Everett twice.

Willie Brown testified he had delivered marijuana to the club for appellant about twice a week. He stated that earlier on the day of the killings he had been to the club with appellant and Johnson and had stayed in the car when they went to collect the money. He said when appellant returned to the car he said they did not have money at that time, and that they would come back.

Fingerprints lifted at the scene of the crime included appellant's prints. Appellant originally was arrested and charged with the murders on October 18, 1984. He remained in jail for 134 days from that arrest; however, because State witness Ulysses Threats could not be found the State filed a motion to *nolle prosequi.*

In September of 1989, a deputy prosecutor called Detective Prater and told him there was a person in his office who wanted to talk to police about a homicide. Detective Prater went to the office and found the person wishing to discuss the homicide was appellant. Prater took appellant to his office and started interviewing him on the basis that he was a witness who had information about a murder. He did not consider him to be a suspect. However, during the course of the interview, he came to the conclusion that appellant in fact was a suspect, stopped the interview, *Mirandized* appellant and had him sign a waiver form.

Appellant stated that he had gone to the house with Larry Johnson and talked to the two men about money they owed him for marijuana. He said he was drunk and upset with them because of their payment record. He stated that he shot each man twice in the head with a .38 caliber revolver. He indicated he had thrown the gun in a pond in the area of 21st and Shadeland;

however, a search failed to produce the gun.

Appellant stated that voices told him that he must confess to the crimes or he would die. After charges again were lodged against appellant, his attorney filed a suggestion of incompetence and the trial court appointed doctors to examine appellant. He was found to be incompetent to stand trial and on December 19, 1989, the court ordered him to be transferred from the Marion County Jail to the Logansport State Hospital. On June 12, 1990, he was ordered returned to Marion County to stand trial. On March 4, 1991, his counsel filed another suggestion of incompetency and doctors again were appointed. At a subsequent hearing, the court found that appellant was at that time competent to stand trial.

■ Appellant claims he should have been discharged because he was not timely brought to trial. Appellant is correct in his contention that the State should be charged with the 134 days he spent in jail when he originally was arrested on October 18, 1984. *Bentley v. State* (1984), Ind., 462 N.E.2d 58. However, appellant's contention that the State should be charged with at least part of the time he spent at Logansport Hospital is incorrect. The delays resulting from the claim of incompetency and the period of time that it took for him to regain competency to stand trial are not charged against the State. *Baldwin v. State* (1980), 274 Ind. 269, 411 N.E.2d 605; *Flewallen v. State* (1977), 267 Ind. 90, 368 N.E.2d 239. By using these and other claims that continuances should not have been charged to appellant, he calculates he had been held well beyond a year and thus entitled to discharge under Ind.Criminal Rule 4. However, we do not find his calculations to be accurate. He in fact was brought to trial well within a year of countable time from his first arrest until his trial.

■ Appellant claims he was denied effective assistance of counsel and was harmed by the court's refusals to appoint other counsel for him. From reading the record, it becomes abundantly clear that appellant, to say the least, was a difficult client. Appellant would propose various actions, and when his counsel would refuse to follow his suggestions, appellant would ask that he be dismissed. He claimed, among other things, that Larry Johnson, who had been with him at the time of the murders, had been declared mentally incompetent and that his lawyer did not follow up on this; thus, he lost out on his ability to challenge the credibility of Johnson because of mental incompetence.

■ There is nothing in this record to indicate that Johnson in fact had been found mentally incompetent and there is nothing to show that even had Johnson been declared incompetent that it would have been to such a degree as to have influenced his ability to testify to events at a given time. *Witte v. State* (1987), Ind., 516 N.E.2d 2. Unsoundness of mind alone does not render a witness incompetent. *Ware v. State* (1978), 268 Ind., 563, 376 N.E.2d 1150. We see nothing in this record to indicate any failure on the part of trial counsel to vigorously defend appellant.

■ Appellant claims the trial court erred when it sent exhibits to the jury room during deliberations. The decision whether to send exhibits to the jury room is a matter for the trial court's discretion. *Mulligan v. State* (1986), Ind. 487 N.E.2d 1309; *Jackson v. State* (1980), 274 Ind. 297, 411 N.E.2d 609. Appellant claims, however, that the trial court abused its discretion because among the exhibits there were twelve photographs of the deceased persons and photographs of the room, including one showing a dead body and several showing blood and various other objects.

■ Appellant contends these photographs were repetitious and would unduly prejudice the jury. However, each of the photographs illustrated a specific portion of the testimony being submitted to the jury. As such, they were admissible and properly permitted in the jury room. *Mulligan, supra.* Although there were several pictures of the deceased persons, each

was taken from different angles and demonstrated the various wounds they received and would aid the jury in understanding the testimony of the doctor who performed the autopsy. We do not find these photographs gruesome to the point of being prejudicial. The trial court did not err in permitting the exhibits to go to the jury.

Appellant claims the trial court erred in refusing to suppress the statement he made to police at the time he voluntarily went to the police department. He claims that these two factors: 1) that at the time of his confession he claimed he heard voices compelling him to confess; and 2) that he ultimately was determined to be incompetent to stand trial and was sent to Logansport Hospital, led to the conclusion that he was incompetent to make a voluntary confession. He contends his statement should have been suppressed.

■ He concedes in his brief that the United States Supreme Court in a case almost exactly like his case has decided this issue against him. *Colorado v. Connelly* (1986), 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473. Without going into detail, he concludes that *Connelly* should not govern in his case. However, the Supreme Court of the United States held that the purpose of the Fifth Amendment's testimonial privilege against self-incrimination and the requirements of *Miranda* are to protect against police misconduct. Although a person's mental condition is relevant to the issue of susceptibility to police coercion, where the person voluntarily makes a confession without police coercion the confession may be considered in spite of the mental condition.

■ Although it is obvious appellant was under some mental delusions at the time, it also is obvious he had full recall of the matters which had occurred, was able to talk lucidly to the police, and indicated an understanding of his *Miranda* rights and in fact signed a written waiver of those rights. It appears the facts in the case at bar closely parallel those in *Connelly*. We therefore hold the trial court did not err in refusing to suppress appellant's statement.

Even though appellant has court-appointed counsel in this appeal, he has filed a *pro se* brief in which he finds fault with counsel's handling of his appeal. He makes a specific claim that counsel has made a direct misrepresentation by stating that probable cause was found for appellant's arrest. He attaches several exhibits which he claims will show that no probable cause was ever found. However, we have searched the record and find that in Volume I, page 2, under the date of 10/19/89, there is an entry showing that a probable cause affidavit was filed, probable cause found, and a warrant issued. Thus, it is obvious that appellate counsel was correct in his recitation of the record.

The other matters contained in appellant's brief are argumentative and for the most part inaccurate. His appellate counsel has properly covered the judicable issues in this appeal.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and KRAHULIK, JJ., concur.