**Ahmad EDWARDS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0602–CR–144.

Court of Appeals of Indiana.

Sept. 18, 2006.

Michael R. Fisher, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Ahmad Edwards appeals from his convictions for Attempted Murder,[1] a class A felony, Battery With a Deadly Weapon,[2] a class C felony, Criminal Recklessness,[3] a class D felony, and

---

1. Ind.Code §§ 35–41–5–1, 35–42–1–1.

2. I.C. § 35–42–2–1.

3. I.C. § 35–42–2–2.

Theft,[4] a class D felony. Edwards also argues that the trial court erred in imposing his sentences. Specifically, Edwards raises the following arguments: (1) the trial court erred in refusing to permit Edwards to represent himself in Edwards's second trial on the attempted murder and battery charges; (2) the trial court erred in denying his motions for discharge because he was denied his right to a speedy trial; (3) the trial court erred in imposing Edwards's sentences because it considered an improper aggravating circumstance; and (4) the trial court imposed sentences that are inappropriate in light of the nature of the offenses and Edwards's character.

We and the trial court alike are bound by the precedent of the United States Supreme Court. Consequently, we are compelled to conclude that the trial court erred in denying Edwards's request to represent himself in his second trial, inasmuch as it had already found him competent to stand trial. Finding no other error, we affirm in part, reverse in part, and remand with instructions to vacate Edwards's convictions for attempted murder and battery and to hold a new trial on those charges.

## FACTS

On July 12, 1999, shortly after noon, Ryan Martin, a loss prevention officer at the Parisian Department Store in downtown Indianapolis, received a telephone call from a sales associate in the store's shoe department regarding a suspiciously-acting patron. Martin observed the patron, later identified as Edwards, on the store's surveillance system, and noticed Edwards place a pair of shoes into a bag and then walk out of the store.

Martin exited the store, approached Edwards on a street corner, and identified himself as a Parisian loss prevention officer. Edwards turned and appeared to be preparing to flee, so Martin grabbed Edwards in a "bear hug" and held onto him until Martin heard a gunshot. Tr. p. 98–100, 144. Martin then observed that Edwards had a gun in his hand, at which time Martin let go of Edwards and rolled away. Martin then heard a second gunshot.

At that point, Martin was on the ground with one hand on the ground and the other hand in the air to show Edwards that he was unarmed. Edwards began to walk away but then stopped, turned around, pointed the gun at Martin's head from approximately seven feet away, and fired a third shot. The bullet missed Martin and struck the lower right leg of a bystander. Martin later realized that one of the bullets had struck him, grazing his back.

After firing the third shot, Edwards ran away from the store on Washington Street. Thomas Flynn, a special agent with the Federal Bureau of Investigation, happened to be driving down Washington Street at that time. Agent Flynn heard what sounded like a large-caliber weapon being fired and observed that people on the street bore an expression that "told [him] unmistakably that something bad was occurring...." Tr. p. 357. The agent then observed Edwards, who had a different expression on his face than the other people on the street, running toward him. Edwards was running between vehicles and people "seemed to be trying to get away from" him. Id. at 359. Agent Flynn exited his vehicle and chased after Edwards, following him down an alley and watching as he entered a parking garage.

Agent Flynn looked into the parking garage and observed Edwards crouching

4. Ind.Code § 35–43–4–2.

in a corner. The agent identified himself and ordered Edwards to raise his hands, observing that Edwards had a "large caliber semiautomatic handgun" in his hand. *Id.* at 367. Edwards pointed his gun toward the agent's face and started to move away from Agent Flynn, who was yelling constantly at Edwards to drop the gun. Edwards eventually turned and again pointed the weapon at Agent Flynn, who raised his own weapon and fired at Edwards. Edwards was struck in his thigh by the agent's bullet and fell onto the ground. Eventually, Edwards complied with Agent Flynn's order to drop the gun.

On July 15, 1999, the State charged Edwards with class A felony attempted murder, class C felony battery with a deadly weapon, class D felony criminal recklessness, and class D felony Theft. On August 16, 2000, Edwards was found incompetent to stand trial, but on March 14, 2001, Edwards was certified as competent to stand trial. On November 24, 2003, Edwards was again found incompetent to stand trial, but was certified as competent to stand trial on July 29, 2004.

A jury trial was held on June 27 and 28, 2005. The jury found Edwards guilty of theft and criminal recklessness but was unable to reach a verdict on the attempted murder and battery charges. The trial court declared a mistrial with respect to the attempted murder and battery charges and scheduled a new trial on those charges.

On August 3, 2005, Edwards moved to proceed pro se and his trial counsel moved to withdraw.[5] The trial court granted both motions. Appellant's App. p. 54. Apparently, at some point not reflected in the Chronological Case Summary, the trial court again appointed counsel to represent Edwards. On August 31, 2005, Edwards again moved to proceed pro se, and the trial court summarily denied that motion. On December 13, 2005, Edwards filed another petition to proceed pro se, and following a hearing on the morning of Edwards's second jury trial, the trial court denied the request, finding that although Edwards was competent to stand trial he was incapable of representing himself.

On December 19–21, 2005, a second jury trial was held on the attempted murder and battery with a deadly weapon charges. The jury found Edwards guilty of both charges. On January 17, 2006, the trial court sentenced Edwards to the presumptive term on all counts—thirty years for attempted murder, four years for battery with a deadly weapon, and one and one-half years each for criminal recklessness and theft. The trial court ordered all sentences to be served concurrently, for a total executed sentence of thirty years. Edwards now appeals.

## DISCUSSION AND DECISION

### I. Right of Self–Representation

 Edwards first argues that the trial court erred in denying his request to represent himself at his second trial. The extent of a criminal defendant's right to self-representation under the Sixth Amendment to the United States Constitution was articulated by the United States Supreme Court in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *see also Sherwood v. State,* 717 N.E.2d 131 (Ind.1999) (describing and following the *Faretta* decision). The *Faretta* Court held that a state may not "constitu-

---

5. Apparently, Edwards also moved to proceed pro se before his first trial began. But at the hearing prior to Edwards's second jury trial, the trial court commented that it had denied that motion because Edwards intended to raise the defense of insanity, which would have required a continuance. Tr. p. 3–4. Edwards does not appeal that order.

tionally hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense." 422 U.S. at 807, 95 S.Ct. 2525. More specifically, the Court noted that the Sixth Amendment grants to the accused "personally the right to make his defense." *Id.* at 819, 95 S.Ct. 2525. Thus, "[u]nless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense." *Id.* at 821, 95 S.Ct. 2525 (emphasis in original). Although a pro se defendant will lose the advantage of an attorney's training and experience and may conduct his defense to his own detriment, he has the constitutional right to do so. *Id.* at 834, 95 S.Ct. 2525.

More recently, the United States Supreme Court considered what, if any, difference there is between competency to stand trial and competency to represent oneself. *Godinez v. Moran,* 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). In *Godinez,* the Court concluded that the competency standard for waiving the right to counsel is not higher than the competency standard for standing trial. *Id.* at 391, 113 S.Ct. 2680. More specifically, "[t]he Court reiterated the longstanding distinction between competence to choose self-representation, *which is measured by competence to stand trial,* and competence to represent oneself effectively, which the defendant is not required to demonstrate." *Sherwood,* 717 N.E.2d at 135 (analyzing *Godinez,* 509 U.S. at 399–400, 113 S.Ct. 2680) (emphasis added).

The *Godinez* Court did, however, recognize a separate constitutional prerequisite for waiving the right to counsel—the requirement that such a waiver be knowing and voluntary. 509 U.S. at 400, 113 S.Ct. 2680. As explained by our Supreme Court,

[w]hereas the competency inquiry focuses on the ability to understand the proceedings, the 'knowing and voluntary' inquiry focuses on whether the defendant actually understands the significance and consequences of his choice and whether the decision is uncoerced. In addition, this Court has held that the right to represent oneself must be clearly and unequivocally asserted within a reasonable time before the trial begins.

Therefore, a defendant who is competent to stand trial and who knowingly, intelligently and voluntarily makes a timely and unequivocal waiver of counsel is entitled to exercise the right of self-representation....

*Sherwood,* 717 N.E.2d at 135 (citations omitted).

Here, the trial court acknowledged *Sherwood* but concluded that it could carve out an exception to the rule for situations, such as this one, where the defendant was competent to stand trial but unable to represent himself:

Well, I'm, you know, the easiest thing for me to have done would have been to say sure, let him defend himself, get the case done in a couple of days and not really care whether justice had been done or not.... I spent some time going over [the reports of numerous doctors who had evaluated Edwards's competency and mental health].... Each and every report where a ... neurological exam was performed found either delusions, a delusional disorder of the grandiose type or schizophrenia of an undifferentiated type.... Several of the reports refer to rambling writings as an indication of an inability to stay focused. The report upon which we relied in finding that Mr. Edwards was competent ... still found that there was schizophrenia of an undifferentiated type; found that Mr. Edwards acknowledged

his need for counsel; found that Mr. Edwards was able to plan a legal strategy in cooperation with his attorney.... With these findings, he's competent to stand trial but I'm not going to find he's competent to defend himself. So the request to proceed pro se will be denied.

Tr. p. 7–9. Supporting the trial court's conclusions are the reports of the doctors who examined Edwards and the voluminous pages of pro se correspondence drafted by Edwards and sent to the trial court. As an example of Edwards's correspondence, we refer to his version of the instant offenses attached to the presentence investigation report:

> The appointed motion of permissive intervention filed therein the court superior on, 6–26–01 caused a stay of action and apon [sic] it's [sic] expiration or thereafter three years the plan to establish a youth program to and for the coordination of aspects of law enforcement to prevent and reduce crime amoung [sic] young people in Indiana became a diplomatic act as under the Safe Streets Act of 1967, "A omnibuc [sic] considerate agent: I membered [sic] clients within the public and others that at/production of the courts actions showcased causes. The costs of the stay (Trial Rule 60) has a derivative property that is: my knowledged [sic] events as not unnexpended [sic] to contract the membered [sic] clients is the commission of finding a facilitie [sic] for this plan or project to become organization of administrative recommendations conditioned by governors.

Appellant's App. p. 646.

We are entirely sympathetic to the conclusion reached by the trial court and appreciate that it was simply trying to ensure that Edwards received a fair trial. We also acknowledge the authority cited by the State—including more recent separate opinions of a number of Justices on the United States Supreme Court—that criticizes the holdings of *Faretta* and *Godinez*. Appellee's Br. p. 8–9. But *Faretta* and *Godinez* have never been overruled, and the rules announced therein and further articulated in *Sherwood* leave little wiggle room. The Supreme Courts of the United States and of Indiana have pronounced that one's competency to represent oneself at trial is measured by one's competency to stand trial and that the standard for the former may not be higher than the standard for the latter.

■ Here, Edwards was found competent to stand trial. He made multiple timely and unequivocal requests to represent himself prior to his second trial, and there has been no suggestion that his requests were unknowing or involuntary. Consequently, it was incumbent upon the trial court to grant his request. Similarly, it is incumbent upon us to reverse Edwards's convictions for attempted murder and battery with a deadly weapon and to remand for a retrial on those charges.

■ We emphasize that on remand, if Edwards still desires to represent himself, the trial court must ensure that his waiver of his right to representation by counsel is both knowing and voluntary and that Edwards is made aware of the nature, extent, and importance of the right and the consequences of waiving that right. If the trial court concludes that Edwards is incapable of making a knowing and voluntary waiver and/or understanding the consequences of this waiver, it should articulate the factors causing it to arrive at that conclusion.

We will consider Edwards's arguments regarding his right to a speedy trial and the sentences imposed by the trial court only with respect to his remaining convictions for criminal recklessness and theft.

## II. Speedy Trial

Edwards next argues that the trial court erred in denying his motion for discharge pursuant to Indiana Criminal Rule 4(C). In particular, he argues that he was denied his right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution and Article I, section 12 of the Indiana Constitution.

 Indiana Criminal Rule 4 establishes deadlines by which time trials must begin:

(B) Defendant in Jail—Motion for Early Trial.

(1) If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. Provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as set forth in subdivision (A) of this rule. Provided further that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time.

\* \* \*

(C) Defendant Discharged. No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during the period because of congestion of the court calendar. . . .

Although the duty to bring the defendant to trial within one year is an affirmative one resting with the State, the time for trial is extended for delays caused by the defendant's own act or a continuance had on the defendant's own motion. *Cook v. State*, 810 N.E.2d 1064, 1066–67 (Ind.2004). Furthermore, if a defendant "seeks or acquiesces in any delay which results in a later trial date, the time limitations of the rule are also extended by the length of those delays." *Wooley v. State*, 716 N.E.2d 919, 924 (Ind.1999). We review a trial court's ruling on a Rule 4 motion for discharge for an abuse of discretion. *Smith v. State*, 802 N.E.2d 948, 951 (Ind. Ct.App.2004).

 Here, Edwards first claims that he was entitled to discharge pursuant to Rule 4(C). He moved for discharge pursuant to that rule on September 13, 2004, and November 1, 2004, and argues that the trial court erred in denying those motions. Initially, we observe that although Edwards was represented by counsel at the time, he filed both motions pro se. Consequently, the trial court was not required to rule on or consider those motions, and, in fact, it struck the discharge motion filed on September 13, 2004. *See Underwood v. State*, 722 N.E.2d 828, 832 (Ind.2000) (holding that after counsel was appointed, the defendant spoke to the court through counsel and the court was not required to respond to a pro se request of or objection by the defendant).

The pro se nature of the motions notwithstanding, we will address the merits of Edwards's argument. The State is charged with the lapse of time between July 15, 1999, and October 18, 1999—a total of 95 days—at which time the trial was continued because of a congested calendar. Subsequently, on December 8, 1999, Edwards filed a claim of incompetence and was not found competent until March 19, 2001—a period of time that is charged to Edwards. *See Pettiford v. State,* 619 N.E.2d 925, 927 (Ind.1993) (holding that delays resulting from a claim of incompetence and the period of time to regain competency are not charged against the State).

■■ After Edwards was found competent on March 19, 2001, the State is charged with the time between that date and May 16, 2001—a total of 58 days—at which time Edwards requested a continuance. The State is also charged with the days that passed between May 29, 2001, and August 1, 2001—a total of 64 days—at which time it requested that Edwards be reexamined by psychiatrists for the purpose of determining his competency. Edwards was subsequently found incompetent and was committed to a state hospital until August 4, 2004, at which time he was declared competent and returned to jail. As noted above, delays resulting from a claim of incompetence and the period of time required to regain competency are not charged against the State. *Pettiford,* 619 N.E.2d at 927. The State is charged with the time that passed between August 4, 2004, and November 1, 2004—a total of 89 days—the date on which Edwards filed the most recent discharge motion. As of November 1, 2004, however, the State was only charged with a delay of 306 days. Consequently, the trial court properly denied Edwards's motion for discharge.

■ Furthermore, Edwards subsequently waived any claim for discharge pursuant to Rule 4(C) because he failed to object during pretrial conferences held on December 3, 2004, February 22, 2005, June 29, 2005, and September 16, 2005, when subsequent trial dates were set beyond the one-year limit. *See Brown v. State,* 725 N.E.2d 823, 825 (Ind.2000) (holding that a defendant waives the right to discharge unless he objects at the earliest opportunity to a trial date outside the one-year period). Thus, Edwards is not entitled to relief under Rule 4(C).

■ Edwards next claims that he is entitled to relief under Rule 4(B). To invoke this rule, a defendant must maintain a position reasonably consistent with his request for a speedy trial and must object, at his earliest opportunity, to a trial setting that is beyond the seventy-day time period. *Hill v. State,* 777 N.E.2d 795, 798 (Ind.Ct.App.2002). The failure at any point to maintain a consistent position with the motion constitutes an abandonment of the request and the speedy trial motion ceases to have legal viability. *Sholar v. State,* 626 N.E.2d 547, 549 (Ind.Ct.App. 1993).

■ Edwards argues that the trial court should have granted his pro se September 13, 2004, motion for discharge based upon Rule 4(B). As noted above, however, the trial court was entitled to, and did, strike this motion because Edwards was represented by counsel at that time. Even if the trial court had ruled upon it, however, Edwards was not entitled to relief. Prior to September 13, 2004, Edwards's most recent request for a speedy trial was made on May 29, 2001. In the intervening period of time, Edwards requested a continuance and failed to object to trial dates set outside the 70–day period. Consequently, Edwards was not entitled to be discharged pursuant to Rule

4(B) on September 13, 2004. *See Hill,* 777 N.E.2d at 798.

### III. Sentencing Arguments

#### A. Aggravating Factor

 Edwards argues that the trial court erred in imposing his sentence for his criminal recklessness because it considered an improper aggravating factor. Specifically, he argues that the trial court erred in finding the "danger to society" caused by Edwards's actions to be an aggravator because it is an element of the crime of criminal recklessness.[6] Tr. p. 498.

 Sentencing determinations are within the sound discretion of the trial court, and we will only reverse for an abuse of discretion. *Krumm v. State,* 793 N.E.2d 1170, 1186 (Ind.Ct.App.2003). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* In a sentencing statement, a trial court must identify all significant aggravating and mitigating factors, explain why such factors were found, and balance the factors in arriving at the sentence. *Bryant v. State,* 841 N.E.2d 1154, 1156 (Ind.2006). A trial court may not use a material element of an offense as an aggravating factor. *McCann v. State,* 749 N.E.2d 1116, 1120 (Ind.2001).

 Here, the trial court imposed the presumptive[7] sentence of one and one-half years for Edwards's criminal recklessness conviction, explicitly noting that but for the "danger to society" aggravator, "a sentence well below the presumptive would be appropriate." Tr. p. 499. It is apparent that, although it did not spell it out in so many words, the trial court intended to consider the nature and circumstances of the crime as an aggravating factor. Specifically, the trial court noted that Edwards's actions amounted to "a shootout at high noon downtown," therefore causing a "danger to society. . . ." *Id.* p. 498. The nature and circumstances of a crime is a proper aggravator so long as the trial court takes into consideration facts not needed to prove the elements of the offense. *McCann,* 749 N.E.2d at 1120. Here, Edwards opened fire on a public sidewalk in the middle of downtown Indianapolis at noon on a weekday. It is apparent that the trial court was within its discretion to consider the nature and circumstances of this crime to be an aggravating factor. Additionally, we emphasize that the trial court did not enhance Edwards's sentence; to the contrary, it imposed the presumptive term. Under these circumstances, we cannot conclude that the trial court abused its discretion in sentencing Edwards.

#### B. Appropriateness

 Finally, Edwards argues that the sentence imposed by the trial court is inappropriate in light of the nature of the offenses and his character. Ind. Appellate Rule 7(B). Specifically, Edwards urges that we should carefully consider his long-standing history of mental illness in analyzing the appropriateness of his sentence.

Turning first to the nature of the offenses, we again observe that Edwards stole property from Parisian, opened fire in the middle of a public sidewalk in downtown Indianapolis at noon on a weekday, shot a security guard and a bystander, fled

---

6. Edwards does not argue that this aggravator is improper with respect to his theft conviction.

7. Indiana's sentencing statutes were amended by P.L. 71–2005, sec. 7, with an emergency effective date of April 25, 2005, to alter "presumptive" sentences to "advisory" sentences.

from a federal agent, and pointed a loaded gun at the agent. Edwards's actions evince a lack of concern for the safety of pedestrians and a disrespect for authority.

As to the nature of Edwards's character, we note that his criminal history includes five prior adult arrests and prior convictions for operating a vehicle while intoxicated and criminal trespass. We are mindful of Edwards's history of mental illness and it is apparent from a review of the record that the trial court was also mindful of that factor. Given the nature of the offenses and Edwards's character, we cannot conclude that the trial court's imposition of concurrent presumptive sentences was inappropriate.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions to vacate Edwards's convictions for attempted murder and battery and to hold a new trial on those charges.

VAIDIK, J., and CRONE, J., concur.