ATTORNEY FOR APPELLANT
Michael R. Fisher
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Thomas M. Fisher
Solicitor General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 49S02-0705-CR-202

AHMAD EDWARDS,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49G05-9907-CF-121975
The Honorable Grant Hawkins, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-0602-CR-144

**May 17, 2007**

**Boehm, J.**

We hold that the federal constitutional right to self-representation requires that a defendant who is competent to be tried for a crime be permitted to proceed pro se if that is the defendant's choice.

**Facts and Procedural Background**

On July 12, 1999, Ahmad Edwards fired three gunshots after being confronted on a downtown Indianapolis street by Ryan Martin, a department store loss prevention officer who had seen Edwards steal a pair of shoes. One of the shots grazed Martin's back, and one struck a bystander in the ankle. Edwards fled. Special Agent Thomas Flynn of the FBI was in the vicinity and pursued Edwards into a parking garage where he found Edwards in a "crouched position" placing some items in a shaded corner. After several requests that Edwards drop his weapon, Flynn shot Edwards in the thigh and apprehended him. Three days later, Edwards was charged with attempted murder, battery with a deadly weapon, criminal recklessness, and theft.

Two disinterested psychiatrists found Edwards to be schizophrenic, and the trial court declared him incompetent to stand trial. In 2001, after two years of evaluation and treatment, Edwards was evaluated by a staff psychiatrist at the Logansport State Hospital and found competent to stand trial. However, in November 2003, the trial court ordered a second examination by two different disinterested psychiatrists, and Edwards was once again found incompetent. Finally, in July 2004, after another evaluation by a staff psychiatrist at the Logansport State Hospital, Edwards was found competent to stand trial. Edwards moved to proceed pro se, but the trial court denied that request, explaining that Edwards had stated his intention to raise insanity as a defense. The first trial took place in June 2005 and resulted in convictions of criminal recklessness and theft but a hung jury as to attempted murder and battery with a deadly weapon. The court declared a mistrial and scheduled a new trial on the latter two counts.

On August 3, 2005, Edwards moved to proceed pro se at the retrial, and his counsel moved to withdraw. The trial court granted both motions. It is unclear whether Edwards then had new appointed trial counsel. In any event, on August 31, 2005, Edwards again moved to proceed pro se, and the trial court denied that motion. On December 13, 2005, Edwards filed a final motion to proceed pro se. That motion was heard on the morning of December 19, 2005, the first day of Edwards's retrial. At that hearing the trial court denied Edwards's motion to proceed pro se. The trial court found that Edwards was competent to stand trial but lacked the additional capability required to conduct a defense.

After a three-day trial, Edwards was convicted of attempted murder and battery with a deadly weapon. He was sentenced to presumptive terms on those two counts and the two convictions from the first trial, with all four sentences to be served concurrently. This resulted in a sentence of thirty years, the presumptive sentence for attempted murder. Edwards appealed, claiming that he was denied his Sixth Amendment right to self-representation at his second trial. The Court of Appeals agreed and reversed and remanded this case for retrial of the attempted murder and battery counts. Edwards v. State, 854 N.E.2d 42, 45 (Ind. Ct. App. 2006). The State seeks transfer, which is granted by order concurrent with this opinion.

## The Right to Self-Representation

The State contends that the trial court properly found Edwards incompetent to represent himself because he was incapable of presenting a "meaningful" defense. The State argues that due process and fundamental fairness of a criminal trial are overriding considerations that limit the right to self-representation. Edwards responds that the Sixth Amendment to the Federal Constitution guarantees an accused the right to self-representation.[1] He cites precedent from the Supreme Court of the United States confirming this broad right to self-representation and holding that the standard for competence to waive the right to counsel is the same as that for competence to stand trial. Thus, Edwards contends that the trial court committed reversible error in finding him competent to stand trial but denying his request to represent himself. The State responds that more recent authority casts doubt on the continued vitality of the authorities on which Edwards relies. We agree that this contention has some force, but we conclude that we are bound by United States Supreme Court precedent and that the State must address its contention to that Court.

A. *Faretta v. California*

---

[1] The right to counsel under Article 1, section 13 of the Indiana Constitution includes the right to appointed counsel for indigent defendants. See Stroud v. State, 809 N.E.2d 274, 279 (Ind. 2004). This right was recognized in Indiana before Gideon v. Wainwright, 372 U.S. 335 (1963) established a Fourteenth Amendment right to counsel in state court proceedings. State v. Minton, 234 Ind. 578, 581, 130 N.E.2d 226, 228 (1955); Taylor v. State, 227 Ind. 131, 135-36, 84 N.E.2d 580, 581 (1949). Edwards makes no separate argument under the Indiana Constitution. Because we conclude that Edwards had a right under the Federal Constitution to proceed pro se, whether he also enjoys the right under the Indiana Constitution is academic, and we do not address the issue.

3

Edwards cites <u>Faretta v. California</u>, 422 U.S. 806 (1975) as establishing his Sixth Amendment right to self-representation. In <u>Faretta</u>, the Supreme Court of the United States stated the question as whether a state court may "hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense." 422 U.S. at 807. The Court concluded that it could not. <u>Id.</u> In reaching this conclusion, the Court cited the structure of the Sixth Amendment, which provides:

> In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation; to be confronted with the witness against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI. <u>Faretta</u> observed that these rights are guaranteed in state proceedings by the Fourteenth Amendment. <u>Faretta</u>, 422 U.S. at 818. Although the Sixth Amendment makes no explicit reference to a right to proceed pro se, <u>Faretta</u> found this right implicit because the right to defend is given to the accused, and counsel is to assist, not conduct, the defense. <u>Id.</u> at 818-20. The defendant therefore has a federal constitutional right to be the "master" of the defense. <u>Id.</u> at 820. The <u>Faretta</u> majority conceded that most criminal defendants would be better defended by counsel. <u>Id.</u> at 834. But to force unwanted counsel on a defendant "violates the logic" of the Sixth Amendment. <u>Id.</u> at 820.

<u>Faretta</u> also held that an accused must "knowingly and intelligently" forego his right to counsel and that the defendant need not possess the skill and experience of a lawyer in order to represent himself. <u>Id.</u> at 835 (quoting <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464-65 (1938)). The Court observed that the record clearly demonstrated that Faretta was "literate, competent, and understanding, and the he was voluntarily exercising his informed free will." <u>Id.</u> Noting that the trial judge informed Faretta that he would be required to follow the rules a lawyer would be required to follow, the Court concluded that

> We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on voir dire. For his technical legal knowledge, as such, was not relevant to assessment of his knowing exercise of the right to defend himself.

<u>Id.</u> at 836 (footnote omitted).

4

Chief Justice Burger dissented in Faretta, joined by Justices Blackmun and Rehnquist. In his view, public confidence in the criminal justice system requires a capable defense, and the right of the accused did not warrant converting it into an "instrument of self destruction." Id. at 839-40. Justice Blackmun filed a separate dissent, expressing a concern that self-representation could transform a trial into a "vehicle for personal or political self-gratification." Id. at 849.

B. *Godinez v. Moran*

A defendant is competent to stand trial if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has a "rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960). In Godinez v. Moran, 509 U.S. 389 (1993), the Supreme Court of the United States reaffirmed the Dusky standard and held that the standard of competence to waive the right to counsel is the same as the standard of competence to stand trial. Moran was charged with three murders and found competent to stand trial. Godinez, 509 U.S. at 391. He informed the court that he wished to plead guilty and discharge his counsel. Id. at 392. After advising Moran of his rights and warning him of the disadvantages of proceeding pro se, the trial court accepted his waiver of counsel and guilty pleas, concluding that Moran had "knowingly and intelligently" waived counsel and had entered his pleas "freely and voluntarily." Id. at 392-93.

Moran was sentenced to death for each of the three murders, and two of these were affirmed on appeal. Id. at 393. Two years later, Moran filed a petition for post-conviction relief alleging that he had been "mentally incompetent to represent himself." Id. After the state courts denied relief, Moran sought federal habeas corpus. Id. The Ninth Circuit reversed the district court's denial of habeas, concluding that competence to waive the right to assistance of counsel requires a higher level of mental function than is required to stand trial. Id. at 394.

The Supreme Court granted certiorari to address Moran's contention that a pro se defense requires "greater powers of comprehension, judgment, and reason than would be necessary to stand trial with the aid of an attorney" and therefore the standard of competence to waive counsel should be higher. Id. at 399. The Supreme Court rejected this claim, holding that "the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." Id. The Supreme Court reiterated its observation in Faretta that "technical legal knowledge" has no relevance to

the determination of whether a defendant is competent to waive his right to counsel and concluded that the standard of competence for waiving that right is not higher than that required to stand trial.  Id. at 400.

Godinez also rejected Moran's claims based on Westbrook v. Arizona, 384 U.S. 150 (1966).  In Westbrook, a two-paragraph per curiam opinion, the Court had vacated a judgment affirming the petitioner's conviction because there had been "a hearing on the issue of [the petitioner's] competence to stand trial" but "no hearing or inquiry into the issue of his competence to waive his constitutional right to the assistance of counsel."  384 U.S. at 150.   In Godinez, the Ninth Circuit reiterated its view, first expressed in Sieling v. Eyman, 478 F.2d 211, 214 (9th Cir. 1973), that Westbrook implied that the standard for competence to stand trial was not sufficient for waiver of counsel.  Moran v. Godinez, 972 F.2d 263, 266 (9th Cir. 1992).  The Supreme Court concluded that the Ninth Circuit had read too much into Westbrook.  Godinez, 509 U.S. at 397.   Rather, "there is no reason to believe that the decision to waive counsel requires an appreciably higher level of mental functioning than the decision to waive other constitutional rights."  Id. at 399.

Godinez did, however, state that:

> A finding that a defendant is competent to stand trial, however, is not all that is necessary before he may be permitted to . . . waive his right to counsel.  In addition to determining that a defendant who seeks to . . . waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary.  In this sense there *is* a "heightened" standard for . . . waiving the right to counsel, but it is not a heightened standard of *competence*.

Id. at 400-01 (internal citations omitted).[2]

C.  *The Trial Court's Denial of Edwards's Request To Proceed Pro Se.*

Faretta established that before permitting a pro se defense the trial court must inform the defendant of the "dangers and disadvantages of self-representation."  422 U.S. at 835.  Although

---

[2] In Sherwood v. State, 717 N.E.2d 131, 135 (1999), we expressed the same thought: "[w]hereas the competency inquiry focuses on the ability to understand the proceedings, the 'knowing and voluntary' inquiry focuses on whether the defendant actually understands the significance and consequences of his choice and whether the decision is uncoerced."  We explicitly recognized the "longstanding distinction between competence to choose self-representation, which is measured by competence to stand trial, and competence to represent oneself effectively, which the defendant is not required to demonstrate."  Id.

"[t]here are no prescribed 'talking points'" that the court must convey, the court must be satisfied that waiver of counsel is "voluntary, knowing, and intelligent." Poynter v. State, 749 N.E.2d 1122, 1126 (Ind. 2001) (citing Leonard v. State, 579 N.E.2d 1294, 1296 (Ind. 1991)). Several courts have held that a defendant's conduct may effect a waiver of the right to counsel. Here, the trial court concluded that Edwards was not capable of conducting a defense and therefore could not knowingly and voluntarily waive his right to counsel.

Edwards properly asserted his Sixth Amendment right to proceed pro se. If the trial court accepts a waiver and permits a pro se defense, a record that is silent on the issue of voluntariness requires reversal. Poynter establishes that the record must establish that the defendant was cautioned as to the pitfalls of self-representation. 749 N.E.2d at 1128. At the retrial the trial court rejected Edwards's attempt to waive the right to counsel. As a result, there was no need to make a record that Edwards was informed of the risks of self-representation.[3] In short, the trial court's conclusion that Edwards could not proceed pro se was based on a determination that Edwards was not competent, not that his decision was involuntary or that he was unaware of the risks of self-representation. For the reasons given below, we conclude that this ruling deprived Edwards of his Sixth Amendment right to represent himself.

At the hearing on the eve of Edwards's second trial, after Edwards again moved to proceed pro se, the trial court reviewed the psychiatric evaluations of Edwards and observed the references to "rambling writings" showing "an inability to stay focused."[4] The trial court

---

[3] The record at Edwards's second trial includes references by the trial court to cautions given in connection with the first trial. Edwards was found competent to stand trial on July 29, 2004, and his first trial took place a year later. At the time the trial court denied Edwards's request to represent himself in the second trial, the court noted that at Edwards's first trial in June 2005, the court had interrogated Edwards as to the several aspects of trial and trial preparation identified in footnote five. Edwards responded that he understood that he would be responsible for these portions of the trial. The trial court did not rely on the continued validity of this exchange.

[4] The record supports these observations. For example, the following is an excerpt from a document that Edwards attached to his presentence investigation report entitled "Defendant's Version of the Instant Offense."

> The appointed motion of permissive intervention filed therein the court superior on, 6-26-01 caused a stay of action and apon [sic] it's [sic] expiration or thereafter three years the plan to establish a youth program to and for the coordination of aspects of law enforcement to prevent and reduce crime amoung [sic] young people in Indiana became a diplomatic act as under the Safe Streets Act of 1967, "A omnibuc [sic] considerate agent: I membered [sic] clients within the public and others that at/production of the courts actions showcased causes. The costs of the stay (Trial Rule 60) has a derivative property that is: my knowledged [sic] events as not unnexpended [sic] to contract the membered

---

7

concluded that competence to waive the right to counsel requires "more than just an understanding of the <u>Sherwood</u> fifteen points."[5]  In denying Edwards's request to proceed pro se, the court explained:

> The easiest thing for me to have done would have been to say sure, let him defend himself, get the case done in a couple of days and not really care whether justice had been done or not.  I think he last time satisfied the <u>Sherwood</u> points by saying he understood he would be responsible for certain portions of the trial. . . . The report upon which we relied in finding that Mr. Edwards was competent was the report of Doctor Robert Sena from July 27, 2004, from Logansport, still found that there was schizophrenia of an undifferentiated type; found that Mr. Edwards acknowledged his need for counsel; found that Mr. Edwards was able to plan a legal strategy in cooperation with his attorney.

The trial court relied on Edwards's schizophrenia, his admission at his first trial that he needed counsel, and the judge's own experience to determine that Edwards could not adequately defend these charges.

### D. *Faretta* as Binding Precedent

The State relies on the dissenting opinions of Justices Burger and Blackmun in <u>Faretta</u> and the several opinions in <u>Martinez v. Court of Appeal of California</u>, 528 U.S. 152 (2000) as support for its position that the denial of Edwards's request for self-representation was required by due process and fundamental fairness.  In <u>Martinez</u>, the Court held that there is no

---

[sic] clients is the commission of finding a facilitie [sic] for this plan or project to become organization of administrative recommendations conditioned by governors.

[5] This is apparently a reference to our discussion in <u>Sherwood</u> of the matters the trial court had discussed with the defendant in that case.  In that case, we noted that

> Sherwood confirmed that he knew he would be solely responsible for conducting voir dire, challenging prospective jurors, making opening and closing statements, making objections and motions, making arguments, subpoenaing witnesses, and preserving issues for appeal, at both the guilt and sentencing phases.  The trial court cautioned Sherwood that an attorney would be better at investigation and interrogation, that Sherwood's incarceration would be a disadvantage in preparing a defense, and that an attorney would generally have greater skills.
>
> The court further admonished Sherwood that the State would be represented by an attorney, that Sherwood could be in the awkward position of questioning himself if he chose to testify, and that Sherwood would have to abide by the same rules of evidence as an attorney.  The trial court advised Sherwood against proceeding pro se.  After this colloquy, Sherwood again stated that he voluntarily, knowingly and intelligently waived his right to counsel, knowing that the consequence could be death and that the State had superior resources and experience.

<u>Sherwood</u>, 717 N.E.2d at 136.

constitutional right to self-representation in an appeal. 528 U.S. at 161. In reaching this conclusion, the Court distinguished Faretta and, the State argues, thereby cast doubt on the reasoning in Faretta. Most significantly, Martinez concluded that "[t]he historical evidence relied upon by Faretta as identifying a right of self-representation is not always useful because it pertained to times when lawyers were scarce, often mistrusted, and not readily available to the average person accused of crime." 528 U.S. at 156. Thus, if a defendant could not obtain a lawyer, self-representation or no defense at all were the only options left. Id. at 157. As Martinez put it, "a government's recognition of an indigent defendant's right to represent himself was comparable to bestowing upon the homeless beggar a 'right' to take shelter in the sewers of Paris." Id. Moreover, Martinez observed that criminal defendants now have a constitutional right to the assistance of appointed counsel at trial. Thus, "an individual's decision to represent himself is no longer compelled by the necessity of choosing self-representation over incompetent or nonexistent representation." Id. at 158. The Martinez majority view was not shared by all of the Justices. Justice Kennedy, in a separate concurring opinion, stated that "[t]o resolve [Martinez] it is unnecessary to cast doubt upon the rationale of Faretta v. California." Id. at 164 (internal citation omitted). Justice Breyer, also concurring, stated:

> I note that judges closer to the firing line have sometimes expressed dismay about the practical consequences of [Farretta's] holding. . . . And without some strong factual basis for believing that Faretta's holding has proved counterproductive in practice, we are not in a position to reconsider the constitutional assumptions that underlie that case.

Id. at 164-65 (internal citation omitted). Finally, Justice Scalia, concurring in Martinez wrote:

> I do not share in the apparent skepticism of today's opinion concerning the judgment of the Court (often curiously described as merely the judgment of "the majority") in Faretta v. California . . . . While I might have rested the decision upon the Due Process Clause rather than the Sixth Amendment, I believe it was correct.

Id. at 165 (internal citation omitted). These separate opinions clearly acknowledge that Martinez cast doubt on Faretta. However, neither Martinez nor any other Supreme Court decision has overruled Faretta or Godinez. Indeed, Martinez made no reference to Godinez. As it stands, Supreme Court precedent from Faretta and Godinez binds us, just as it was held to be controlling by the New Jersey Supreme Court in New Jersey v. Reddish, 859 A.2d 1173, 1189 (N.J. 2004) despite acknowledged criticism of Faretta and recognition of the Martinez concurring opinions.

9

We agree with the State that the trial court's conclusion that Edwards was incapable of adequate self-representation was, at a minimum, reasonable. We understand the trial court's purpose to ensure that Edwards received a fair trial, which is a fundamental requirement of due process. Ward v. State, 810 N.E.2d 1042, 1048 (Ind. 2004) (citing In re Murchison, 349 U.S. 133, 136 (1955)). However, we agree with the conclusion of the Court of Appeals that the Supreme Court of the United States has held that competency to represent oneself at trial is measured by competency to stand trial. Edwards, 854 N.E.2d at 48. Edwards was found competent to stand trial on July 29, 2004, and no party contends he was not competent to stand trial in December 2005. Similarly, as the Court of Appeals pointed out, there has been no claim by the State that Edwards's waiver of counsel was not knowing and voluntary. Here we have a determination by an experienced trial judge that Edwards was incapable of presenting a defense. That determination is necessarily based on factors better evaluated by, as Justice Breyer put it, "judges closer to the firing line." Martinez, 528 U.S. at 164. We have sympathy for the view that a trial court should be afforded some discretion to make that call. The record in this case presents a substantial basis to agree with the trial court and thus presents an opportunity to revisit the holdings of Faretta and Godinez, if the Supreme Court of the United States decides that is to be done. However, as it stands today, we are bound by these authorities as Supreme Court precedent. Accordingly, we hold that because Edwards was found competent to stand trial he had a constitutional right to proceed pro se and it was reversible error to deny him that right on the ground that he was incapable of presenting his defense.

**Conclusion**

Edwards's convictions for attempted murder and battery with a deadly weapon are reversed and this case is remanded for further proceedings. We summarily affirm the Court of Appeals as to issues not addressed in this opinion. See Appellate Rule 58(A).


Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.