(Slip Opinion) OCTOBER TERM, 2007 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## INDIANA *v.* EDWARDS

### CERTIORARI TO THE SUPREME COURT OF INDIANA

No. 07–208.   Argued March 26, 2008—Decided June 19, 2008

After Indiana charged respondent Edwards with attempted murder and other crimes for a shooting during his attempt to steal a pair of shoes, his mental condition became the subject of three competency proceedings and two self-representation requests, mostly before the same trial judge.  Referring to the lengthy record of psychiatric reports, the trial court noted that Edwards suffered from schizophrenia and concluded that, although it appeared he was competent to stand trial, he was not competent to defend himself at trial.  The court therefore denied Edwards' self-representation request.  He was represented by appointed counsel at trial and convicted on two counts. Indiana's intermediate appellate court ordered a new trial, agreeing with Edwards that the trial court's refusal to permit him to represent himself deprived him of his constitutional right of self-representation under the Sixth Amendment and *Faretta* v. *California*, 422 U. S. 806. Although finding that the record provided substantial support for the trial court's ruling, the Indiana Supreme Court nonetheless affirmed the intermediate appellate court on the ground that *Faretta* and *Godinez* v. *Moran*, 509 U. S. 389, required the State to allow Edwards to represent himself.

*Held:* The Constitution does not forbid States from insisting upon representation by counsel for those competent enough to stand trial but who suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves.  Pp. 4–13.

 (a) This Court's precedents frame the question presented, but they do not answer it.  *Dusky* v. *United States*, 362 U. S. 402, and *Drope* v. *Missouri*, 420 U. S. 162, 171, set forth the Constitution's "mental competence" standard forbidding the trial of an individual lacking a rational and factual understanding of the proceedings and sufficient ability to consult with his lawyer with a reasonable degree of rational

understanding. But those cases did not consider the issue presented here, namely, the relation of that "mental competence" standard to the self-representation right. Similarly the Court's foundational "self-representation" case, *Faretta, supra*—which held that the Sixth and Fourteenth Amendments include a "constitutional right to proceed *without* counsel when" a criminal defendant "voluntarily and intelligently elects to do so," 422 U. S., at 807—does not answer the question as to the scope of the self-representation right. Finally, although *Godinez, supra,* presents a question closer to the one at issue in that it focused upon a borderline-competent defendant who had asked a state trial court to permit him to represent himself and to change his pleas from not guilty to guilty, *Godinez* provides no answer here because that defendant's ability to conduct a defense at trial was expressly not at issue in that case, see 509 U. S., at 399–400, and because the case's constitutional holding that a State may *permit* a gray-area defendant to represent himself does not tell a State whether it may *deny* such a defendant the right to represent himself at his trial. Pp. 4–8.

(b) Several considerations taken together lead the Court to conclude that the Constitution permits a State to limit a defendant's self-representation right by insisting upon trial counsel when the defendant lacks the mental competency to conduct his trial defense unless represented. First, the Court's precedent, while not answering the question, points slightly in that direction. By setting forth a standard that focuses directly upon a defendant's ability to consult with his lawyer, *Dusky* and *Drope* assume representation by counsel and emphasize counsel's importance, thus suggesting (though not holding) that choosing to forgo trial counsel presents a very different set of circumstances than the mental competency determination for a defendant to stand trial. Also, *Faretta* rested its self-representation conclusion in part on pre-existing state cases that are consistent with, and at least two of which expressly adopt, a competency limitation on the self-representation right. See 422 U. S., at 813, and n. 9. Second, the nature of mental illness—which is not a unitary concept, but varies in degree, can vary over time, and interferes with an individual's functioning at different times in different ways—cautions against using a single competency standard to decide both whether a defendant who is represented can proceed to trial and whether a defendant who goes to trial must be permitted to represent himself. Third, a self-representation right at trial will not "affirm the dignity" of a defendant who lacks the mental capacity to conduct his defense without the assistance of counsel, see *McKaskle* v. *Wiggins*, 465 U. S. 168, 176–177, and may undercut the most basic of the Constitution's criminal law objectives, providing a fair trial. The trial judge—

Syllabus

particularly one such as the judge in this case, who presided over one of Edwards' competency hearings and his two trials—will often prove best able to make more fine-tuned mental capacity decisions, tailored to the particular defendant's individualized circumstances. Pp. 8–12.

   (c) Indiana's proposed standard, which would deny a criminal defendant the right to represent himself at trial if he cannot communicate coherently with the court or a jury, is rejected because this Court is uncertain as to how that standard would work in practice.   The Court also declines Indiana's request to overrule *Faretta* because today's opinion may well remedy the unfair trial concerns previously leveled against the case. Pp. 12–13.

866 N. E. 2d 252, vacated and remanded.

   BREYER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and STEVENS, KENNEDY, SOUTER, GINSBURG, and ALITO, JJ., joined.   SCALIA, J., filed a dissenting opinion, in which THOMAS, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

—————

No. 07–208

—————

## INDIANA, PETITIONER *v.* AHMAD EDWARDS

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF INDIANA

[June 19, 2008]

JUSTICE BREYER delivered the opinion of the Court.

This case focuses upon a criminal defendant whom a state court found mentally competent to stand trial if represented by counsel but not mentally competent to conduct that trial himself. We must decide whether in these circumstances the Constitution forbids a State from insisting that the defendant proceed to trial with counsel, the State thereby denying the defendant the right to represent himself. See U. S. Const., Amdt. 6; *Faretta* v. *California*, 422 U. S. 806 (1975). We conclude that the Constitution does not forbid a State so to insist.

I

In July 1999 Ahmad Edwards, the respondent, tried to steal a pair of shoes from an Indiana department store. After he was discovered, he drew a gun, fired at a store security officer, and wounded a bystander. He was caught and then charged with attempted murder, battery with a deadly weapon, criminal recklessness, and theft. His mental condition subsequently became the subject of three competency proceedings and two self-representation requests, mostly before the same trial judge:

1. *First Competency Hearing: August 2000.* Five

months after Edwards' arrest, his court-appointed counsel asked for a psychiatric evaluation. After hearing psychiatrist and neuropsychologist witnesses (in February 2000 and again in August 2000), the court found Edwards incompetent to stand trial, App. 365a, and committed him to Logansport State Hospital for evaluation and treatment, see *id.*, at 48a–53a.

2. *Second Competency Hearing: March 2002.* Seven months after his commitment, doctors found that Edwards' condition had improved to the point where he could stand trial. *Id.*, at 63a–64a. Several months later, however, but still before trial, Edwards' counsel asked for another psychiatric evaluation. In March 2002, the judge held a competency hearing, considered additional psychiatric evidence, and (in April) found that Edwards, while "suffer[ing] from mental illness," was "competent to assist his attorneys in his defense and stand trial for the charged crimes." *Id.*, at 114a.

3. *Third Competency Hearing: April 2003.* Seven months later but still before trial, Edwards' counsel sought yet another psychiatric evaluation of his client. And, in April 2003, the court held yet another competency hearing. Edwards' counsel presented further psychiatric and neuropsychological evidence showing that Edwards was suffering from serious thinking difficulties and delusions. A testifying psychiatrist reported that Edwards could understand the charges against him, but he was "unable to cooperate with his attorney in his defense because of his schizophrenic illness"; "[h]is delusions and his marked difficulties in thinking make it impossible for him to cooperate with his attorney." *Id.*, at 164a. In November 2003, the court concluded that Edwards was not then competent to stand trial and ordered his recommitment to the state hospital. *Id.*, at 206a–211a.

4. *First Self-Representation Request and First Trial: June 2005.* About eight months after his commitment, the

hospital reported that Edwards' condition had again improved to the point that he had again become competent to stand trial. *Id.*, at 228a–236a. And almost one year after that Edwards' trial began. Just before trial, Edwards asked to represent himself. *Id.*, at 509a, 520a. He also asked for a continuance, which, he said, he needed in order to proceed *pro se*. *Id.*, at 519a–520a. The court refused the continuance. *Id.*, at 520a. Edwards then proceeded to trial represented by counsel. The jury convicted him of criminal recklessness and theft but failed to reach a verdict on the charges of attempted murder and battery.

5. *Second Self-Representation Request and Second Trial: December 2005.* The State decided to retry Edwards on the attempted murder and battery charges. Just before the retrial, Edwards again asked the court to permit him to represent himself. *Id.*, at 279a–282a. Referring to the lengthy record of psychiatric reports, the trial court noted that Edwards still suffered from schizophrenia and concluded that "[w]ith these findings, he's competent to stand trial but I'm not going to find he's competent to defend himself." *Id.*, at 527a. The court denied Edwards' self-representation request. Edwards was represented by appointed counsel at his retrial. The jury convicted Edwards on both of the remaining counts.

Edwards subsequently appealed to Indiana's intermediate appellate court. He argued that the trial court's refusal to permit him to represent himself at his retrial deprived him of his constitutional right of self-representation. U. S. Const., Amdt. 6; *Faretta, supra.* The court agreed and ordered a new trial. The matter then went to the Indiana Supreme Court. That court found that "[t]he record in this case presents a substantial basis to agree with the trial court," 866 N. E. 2d 252, 260 (2007), but it nonetheless affirmed the intermediate appellate court on the belief that this Court's precedents, namely,

*Faretta*, 422 U. S. 806, and *Godinez* v. *Moran*, 509 U. S. 389 (1993), required the State to allow Edwards to represent himself. At Indiana's request, we agreed to consider whether the Constitution required the trial court to allow Edwards to represent himself at trial.

## II

Our examination of this Court's precedents convinces us that those precedents frame the question presented, but they do not answer it. The two cases that set forth the Constitution's "mental competence" standard, *Dusky* v. *United States*, 362 U. S. 402 (1960) *(per curiam)*, and *Drope* v. *Missouri*, 420 U. S. 162 (1975), specify that the Constitution does not permit trial of an individual who lacks "mental competency." *Dusky* defines the competency standard as including both (1) "whether" the defendant has "a rational as well as factual understanding of the proceedings against him" and (2) whether the defendant "has sufficient present ability *to consult with his lawyer* with a reasonable degree of rational understanding." 362 U. S., at 402 (emphasis added; internal quotation marks omitted). *Drope* repeats that standard, stating that it "has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, *to consult with counsel, and to assist in preparing his defense* may not be subjected to a trial." 420 U. S., at 171 (emphasis added). Neither case considered the mental competency issue presented here, namely, the relation of the mental competence standard to the right of self-representation.

The Court's foundational "self-representation" case, *Faretta*, held that the Sixth and Fourteenth Amendments include a "constitutional right to proceed *without* counsel when" a criminal defendant "voluntarily and intelligently elects to do so." 422 U. S., at 807 (emphasis in original). The Court implied that right from: (1) a "nearly universal

conviction," made manifest in state law, that "forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so," *id.*, at 817–818; (2) Sixth Amendment language granting rights to the "accused;" (3) Sixth Amendment structure indicating that the rights it sets forth, related to the "fair administration of American justice," are "persona[l]" to the accused, *id.*, at 818–821; (4) the absence of historical examples of *forced* representation, *id.*, at 821–832; and (5) "'respect for the individual,'" *id.*, at 834 (quoting *Illinois* v. *Allen*, 397 U. S. 337, 350–351 (1970) (Brennan, J., concurring) (a knowing and intelligent waiver of counsel "must be honored out of 'that respect for the individual which is the lifeblood of the law'")).

*Faretta* does not answer the question before us both because it did not consider the problem of mental competency (cf. 422 U. S., at 835 (Faretta was "literate, competent, and understanding")), and because *Faretta* itself and later cases have made clear that the right of self-representation is not absolute. See *Martinez* v. *Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U. S. 152, 163 (2000) (no right of self-representation on direct appeal in a criminal case); *McKaskle* v. *Wiggins*, 465 U. S. 168, 178–179 (1984) (appointment of standby counsel over self-represented defendant's objection is permissible); *Faretta*, 422 U. S., at 835, n. 46 (no right "to abuse the dignity of the courtroom"); *ibid.* (no right to avoid compliance with "relevant rules of procedural and substantive law"); *id.,* at 834, n. 46 (no right to "engag[e] in serious and obstructionist misconduct," referring to *Illinois* v. *Allen, supra*). The question here concerns a mental-illness-related limitation on the scope of the self-representation right.

The sole case in which this Court considered mental competence and self-representation together, *Godinez, supra,* presents a question closer to that at issue here. The case focused upon a borderline-competent criminal

defendant who had asked a state trial court to permit him to represent himself and to change his pleas from not guilty to guilty.  The state trial court had found that the defendant met *Dusky'*s mental competence standard, that he "knowingly and intelligently" waived his right to assistance of counsel, and that he "freely and voluntarily" chose to plead guilty.  509 U. S., at 393 (internal quotation marks omitted).  And the state trial court had consequently granted the defendant's self-representation and change-of-plea requests.  See *id.*, at 392–393.  A federal appeals court, however, had vacated the defendant's guilty pleas on the ground that the Constitution required the trial court to ask a further question, namely, whether the defendant was competent to waive his constitutional right to counsel.  See *id.*, at 393–394.  Competence to make that latter decision, the appeals court said, required the defendant to satisfy a higher mental competency standard than the standard set forth in *Dusky*.  See 509 U. S., at 393–394.  *Dusky*'s more general standard sought only to determine whether a defendant represented by counsel was competent to stand trial, not whether he was competent to waive his right to counsel.  509 U. S., at 394–395.

This Court, reversing the Court of Appeals, "reject[ed] the notion that competence to plead guilty or to waive the right to counsel must be measured by a standard that is higher than (or even different from) the *Dusky* standard." *Id.*, at 398.  The decision to plead guilty, we said, "is no more complicated than the sum total of decisions that a [represented] defendant may be called upon to make during the course of a trial."  *Ibid.*  Hence "there is no reason to believe that the decision to waive counsel requires an appreciably higher level of mental functioning than the decision to waive other constitutional rights." *Id.*, at 399.  And even assuming that self-representation might pose special trial-related difficulties, "the competence that is required of a defendant seeking to waive his

right to counsel is the competence to *waive the right,* not the competence to represent himself." *Ibid.* (emphasis in original). For this reason, we concluded, "the defendant's 'technical legal knowledge' is 'not relevant' to the determination." *Id.*, at 400 (quoting *Faretta, supra*, at 836).

We concede that *Godinez* bears certain similarities with the present case. Both involve mental competence and self-representation. Both involve a defendant who wants to represent himself. Both involve a mental condition that falls in a gray area between *Dusky'*s minimal constitutional requirement that measures a defendant's ability to stand trial and a somewhat higher standard that measures mental fitness for another legal purpose.

We nonetheless conclude that *Godinez* does not answer the question before us now. In part that is because the Court of Appeals higher standard at issue in *Godinez* differs in a critical way from the higher standard at issue here. In *Godinez,* the higher standard sought to measure the defendant's ability to proceed on his own to enter a guilty plea; here the higher standard seeks to measure the defendant's ability to conduct trial proceedings. To put the matter more specifically, the *Godinez* defendant sought only to change his pleas to guilty, he did not seek to conduct trial proceedings, and his ability to conduct a defense at trial was expressly not at issue. Thus we emphasized in *Godinez* that we needed to consider only the defendant's "competence to *waive the right.*" 509 U. S., at 399 (emphasis in original). And we further emphasized that we need *not* consider the defendant's "technical legal knowledge" about how to proceed at trial. *Id.*, at 400 (internal quotation marks omitted). We found our holding consistent with this Court's earlier statement in *Massey* v. *Moore*, 348 U. S. 105, 108 (1954), that "[o]ne might not be insane in the sense of being incapable of standing trial and yet lack the capacity to stand trial without benefit of counsel." See *Godinez, supra*, at 399–400, n. 10 (quoting

*Massey* and noting that it dealt with "a question that is quite different from the question presented" in *Godinez*). In this case, the very matters that we did not consider in *Godinez* are directly before us.

For another thing, *Godinez* involved a State that sought to *permit* a gray-area defendant to represent himself. *Godinez*'s constitutional holding is that a State may do so. But that holding simply does not tell a State whether it may *deny* a gray-area defendant the right to represent himself—the matter at issue here. One might argue that *Godinez*'s grant (to a State) of permission to allow a gray-area defendant self-representation must implicitly include permission to deny self-representation. Cf. 509 U. S., at 402 ("States are free to adopt competency standards that are more elaborate than the *Dusky* formulation"). Yet one could more forcefully argue that *Godinez* simply did not consider whether the Constitution *requires* self-representation by gray-area defendants even in circumstances where the State seeks to disallow it (the question here). The upshot is that, in our view, the question before us is an open one.

## III

We now turn to the question presented. We assume that a criminal defendant has sufficient mental competence to stand trial (*i.e.*, the defendant meets *Dusky*'s standard) and that the defendant insists on representing himself during that trial. We ask whether the Constitution permits a State to limit that defendant's self-representation right by insisting upon representation by counsel at trial—on the ground that the defendant lacks the mental capacity to conduct his trial defense unless represented.

Several considerations taken together lead us to conclude that the answer to this question is yes. First, the Court's precedent, while not answering the question,

points slightly in the direction of our affirmative answer. *Godinez,* as we have just said, simply leaves the question open. But the Court's "mental competency" cases set forth a standard that focuses directly upon a defendant's "present ability to consult with his lawyer," *Dusky*, 362 U. S., at 402 (internal quotation marks omitted); a "capacity . . . to consult with counsel," and an ability "to assist [counsel] in preparing his defense," *Drope*, 420 U. S., at 171. See *ibid.* ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, *to consult with counsel,* and to assist in preparing his defense may not be subjected to a trial" (emphasis added)). These standards assume representation by counsel and emphasize the importance of counsel. They thus suggest (though do not hold) that an instance in which a defendant who would choose to forgo counsel at trial presents a very different set of circumstances, which in our view, calls for a different standard.

At the same time *Faretta*, the foundational self-representation case, rested its conclusion in part upon pre-existing state law set forth in cases all of which are consistent with, and at least two of which expressly adopt, a competency limitation on the self-representation right. See 422 U. S., at 813, and n. 9 (citing 16 state-court decisions and two secondary sources). See, *e.g.*, *Cappetta* v. *State*, 204 So. 2d 913, 917–918 (Fla. App. 1967), rev'd on other grounds, 216 So. 2d 749 (Fla. 1968), cited in *Faretta*, *supra*, at 813, n. 9 (assuring a "mentally competent" defendant the right "to conduct his own defense" *provided that* "no unusual circumstances exist" such as, *e.g.*, "mental derangement" that "would . . . depriv[e]" the defendant "of a fair trial if allowed to conduct his own defense," 204 So. 2d, at 917–918); *id.*, at 918 (noting that "whether unusual circumstances are evident is a matter resting in the sound discretion granted to the trial judge"); *Allen* v.

*Commonwealth*, 324 Mass. 558, 562–563, 87 N. E. 2d 192, 195 (1949) (noting "the assignment of counsel" was "necessary" where there was some "special circumstance" such as when the criminal defendant was "mentally defective").

Second, the nature of the problem before us cautions against the use of a single mental competency standard for deciding both (1) whether a defendant who is represented by counsel can proceed to trial and (2) whether a defendant who goes to trial must be permitted to represent himself. Mental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways. The history of this case (set forth in Part I, *supra)* illustrates the complexity of the problem. In certain instances an individual may well be able to satisfy *Dusky'*s mental competence standard, for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel. See, *e.g.*, N. Poythress, R. Bonnie, J. Monahan, R. Otto, & S. Hoge, Adjudicative Competence: The MacArthur Studies 103 (2002) ("Within each domain of adjudicative competence (competence to assist counsel; decisional competence) the data indicate that understanding, reasoning, and appreciation [of the charges against a defendant] are separable and somewhat independent aspects of functional legal ability"). See also *McKaskle*, 465 U. S., at 174 (describing trial tasks as including organization of defense, making motions, arguing points of law, participating in *voir dire*, questioning witnesses, and addressing the court and jury).

The American Psychiatric Association (APA) tells us (without dispute) in its *amicus* brief filed in support of neither party that "[d]isorganized thinking, deficits in sustaining attention and concentration, impaired expressive abilities, anxiety, and other common symptoms of severe mental illnesses can impair the defendant's ability

to play the significantly expanded role required for self-representation even if he can play the lesser role of represented defendant." Brief for APA et al. as *Amici Curiae* 26. Motions and other documents that the defendant prepared in this case (one of which we include in the Appendix, *infra*) suggest to a layperson the common sense of this general conclusion.

Third, in our view, a right of self-representation at trial will not "affirm the dignity" of a defendant who lacks the mental capacity to conduct his defense without the assistance of counsel. *McKaskle*, *supra*, at 176–177 ("Dignity" and "autonomy" of individual underlie self-representation right). To the contrary, given that defendant's uncertain mental state, the spectacle that could well result from his self-representation at trial is at least as likely to prove humiliating as ennobling. Moreover, insofar as a defendant's lack of capacity threatens an improper conviction or sentence, self-representation in that exceptional context undercuts the most basic of the Constitution's criminal law objectives, providing a fair trial. As Justice Brennan put it, "[t]he Constitution would protect none of us if it prevented the courts from acting to preserve the very processes that the Constitution itself prescribes." *Allen*, 397 U. S., at 350 (concurring opinion). See *Martinez*, 528 U. S., at 162 ("Even at the trial level . . . the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer"). See also *Sell* v. *United States*, 539 U. S. 166, 180 (2003) ("[T]he Government has a concomitant, constitutionally essential interest in assuring that the defendant's trial is a fair one").

Further, proceedings must not only be fair, they must "appear fair to all who observe them." *Wheat* v. *United States*, 486 U. S. 153, 160 (1988). An *amicus* brief reports one psychiatrist's reaction to having observed a patient (a patient who had satisfied *Dusky*) try to conduct his own

defense: "[H]ow in the world can our legal system allow an insane man to defend himself?"  Brief for Ohio et al. as *Amici Curiae* 24 (internal quotation marks omitted).  See *Massey*, 348 U. S., at 108 ("No trial can be fair that leaves the defense to a man who is insane, unaided by counsel, and who by reason of his mental condition stands helpless and alone before the court").  The application of *Dusky*'s basic mental competence standard can help in part to avoid this result.  But given the different capacities needed to proceed to trial without counsel, there is little reason to believe that *Dusky* alone is sufficient.  At the same time, the trial judge, particularly one such as the trial judge in this case, who presided over one of Edwards' competency hearings and his two trials, will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant.

We consequently conclude that the Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so.  That is to say, the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves.

## IV

Indiana has also asked us to adopt, as a measure of a defendant's ability to conduct a trial, a more specific standard that would "deny a criminal defendant the right to represent himself at trial where the defendant cannot communicate coherently with the court or a jury." Brief for Petitioner 20 (emphasis deleted).  We are sufficiently uncertain, however, as to how that particular standard

would work in practice to refrain from endorsing it as a federal constitutional standard here. We need not now, and we do not, adopt it.

Indiana has also asked us to overrule *Faretta.* We decline to do so. We recognize that judges have sometimes expressed concern that *Faretta,* contrary to its intent, has led to trials that are unfair. See *Martinez, supra*, at 164 (BREYER, J., concurring) (noting practical concerns of trial judges). But recent empirical research suggests that such instances are not common. See, *e.g.*, Hashimoto, Defending the Right of Self-Representation: An Empirical Look at the Pro Se Felony Defendant, 85 N. C. L. Rev. 423, 427, 447, 428 (2007) (noting that of the small number of defendants who chose to proceed *pro se*—"roughly 0.3% to 0.5%" of the total, state felony defendants in particular "appear to have achieved higher felony acquittal rates than their represented counterparts in that they were less likely to have been convicted of felonies"). At the same time, instances in which the trial's fairness is in doubt may well be concentrated in the 20 percent or so of self-representation cases where the mental competence of the defendant is also at issue. See *id*., at 428 (about 20 percent of federal *pro se* felony defendants ordered to undergo competency evaluations). If so, today's opinion, assuring trial judges the authority to deal appropriately with cases in the latter category, may well alleviate those fair trial concerns.

For these reasons, the judgment of the Supreme Court of Indiana is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

*So ordered.*

## APPENDIX

Excerpt from respondent's filing entitled "'Defendant's Version of the Instant Offense,'" which he had attached to his presentence investigation report:

> "'The appointed motion of permissive intervention filed therein the court superior on, 6–26–01 caused a stay of action and apon it's expiration or thereafter three years the plan to establish a youth program to and for the coordination of aspects of law enforcement to prevent and reduce crime amoung young people in Indiana became a diplomatic act as under the Safe Streets Act of 1967, "A omnibuc considerate agent: I membered clients within the public and others that at/production of the courts actions showcased causes. The costs of the stay (Trial Rule 60) has a derivative property that is: my knowledged events as not unexpended to contract the membered clients is the commission of finding a facilitie for this plan or project to become organization of administrative recommendations conditioned by governors.'"  866 N. E. 2d, at 258, n. 4 (alterations omitted).

# SUPREME COURT OF THE UNITED STATES

No. 07–208

INDIANA, PETITIONER *v.* AHMAD EDWARDS

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF
INDIANA

[June 19, 2008]

JUSTICE SCALIA, with whom JUSTICE THOMAS joins,
dissenting.

The Constitution guarantees a defendant who know-
ingly and voluntarily waives the right to counsel the right
to proceed *pro se* at his trial. *Faretta* v. *California*, 422
U. S. 806 (1975). A mentally ill defendant who knowingly
and voluntarily elects to proceed *pro se* instead of through
counsel receives a fair trial that comports with the Four-
teenth Amendment. *Godinez* v. *Moran,* 509 U. S. 389
(1993). The Court today concludes that a State may none-
theless strip a mentally ill defendant of the right to repre-
sent himself when that would be fairer. In my view the
Constitution does not permit a State to substitute its own
perception of fairness for the defendant's right to make his
own case before the jury—a specific right long understood
as essential to a fair trial.

I

Ahmad Edwards suffers from schizophrenia, an illness
that has manifested itself in different ways over time,
depending on how and whether Edwards was treated as
well as on other factors that appear harder to identify. In
the years between 2000 and 2003—years in which Ed-
wards was apparently not treated with the antipsychotic
medications and other drugs that are commonly pre-
scribed for his illness—Edwards was repeatedly declared

incompetent to stand trial. Even during this period, how-
ever, his mental state seems to have fluctuated. For
instance, one psychiatrist in March 2001 described Ed-
wards in a competency report as "free of psychosis, depres-
sion, mania, and confusion," "alert, oriented, [and] appro-
priate," apparently "able to think clearly" and apparently
"psychiatrically normal." App. 61a.

Edwards seems to have been treated with antipsychotic
medication for the first time in 2004. He was found com-
petent to stand trial the same year. The psychiatrist
making the recommendation described Edwards' thought
processes as "coherent" and wrote that he "communi-
cate[d] very well," that his speech was "easy to under-
stand," that he displayed "good communications skills,
cooperative attitude, average intelligence, and good cogni-
tive functioning," that he could "appraise the roles of the
participants in the courtroom proceedings," and that he
had the capacity to challenge prosecution witnesses realis-
tically and to testify relevantly. *Id.*, at 232a–235a (report
of Dr. Robert Sena).

Over the course of what became two separate criminal
trials, Edwards sought to act as his own lawyer. He filed a
number of incoherent written pleadings with the judge on
which the Court places emphasis, but he also filed several
intelligible pleadings, such as a motion to dismiss counsel,
a motion to dismiss charges under the Indiana speedy trial
provision, and a motion seeking a trial transcript.

Edwards made arguments in the courtroom that were
more coherent than his written pleadings. In seeking to
represent himself at his first trial, Edwards complained in
detail that the attorney representing him had not spent
adequate time preparing and was not sharing legal mate-
rials for use in his defense. The trial judge concluded that
Edwards had knowingly and voluntarily waived his right
to counsel and proceeded to quiz Edwards about matters of
state law. Edwards correctly answered questions about

the meaning of *voir dire* and how it operated, and described the basic framework for admitting videotape evidence to trial, though he was unable to answer other questions, including questions about the topics covered by state evidentiary rules that the judge identified only by number. He persisted in his request to represent himself, but the judge denied the request because Edwards acknowledged he would need a continuance. Represented by counsel, he was convicted of criminal recklessness and theft, but the jury deadlocked on charges of attempted murder and battery.

At his second trial, Edwards again asked the judge to be allowed to proceed *pro se*. He explained that he and his attorney disagreed about which defense to present to the attempted murder charge. Edwards' counsel favored lack of intent to kill; Edwards, self-defense. As the defendant put it: "My objection is me and my attorney actually had discussed a defense, I think prosecution had mentioned that, and we are in disagreement with it. He has a defense and I have a defense that I would like to represent or present to the Judge." *Id.,* at 523a.

The court again rejected Edwards' request to proceed *pro se*, and this time it did not have the justification that Edwards had sought a continuance. The court did not dispute that Edwards knowingly and intelligently waived his right to counsel, but stated it was "going to carve out a third exception" to the right of self-representation, and—without explaining precisely what abilities Edwards lacked—stated Edwards was "competent to stand trial but I'm not going to find he's competent to defend himself." *Id.,* at 527a. Edwards sought—by a request through counsel and by raising an objection in open court—to address the judge on the matter, but the judge refused, stating that the issue had already been decided. Edwards' court-appointed attorney pursued the defense the attorney judged best—lack of intent, not self-defense—and Ed-

wards was convicted of both attempted murder and battery.  The Supreme Court of Indiana held that he was entitled to a new trial because he had been denied the right to represent himself.  The State of Indiana sought certiorari, which we granted.  552 U. S. ___ (2007).

## II

## A

The Constitution guarantees to every criminal defendant the "right to proceed *without* counsel when he voluntarily and intelligently elects to do so." *Faretta*, 422 U. S., at 807.  The right reflects "a nearly universal conviction, on the part of our people as well as our courts, that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." *Id.*, at 817.  *Faretta*'s discussion of the history of the right, *id.*, at 821–833, includes the observation that "[i]n the long history of British criminal jurisprudence, there was only one tribunal that ever adopted a practice of forcing counsel upon an unwilling defendant in a criminal proceeding. The tribunal was the Star Chamber," *id.*, at 821.  *Faretta* described the right to proceed *pro se* as a premise of the Sixth Amendment, which confers the tools for a defense on the "accused," and describes the role of the attorney as one of "assistance."  The right of self-representation could also be seen as a part of the traditional meaning of the Due Process Clause.  See *Martinez* v. *Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U. S. 152, 165 (2000) (SCALIA, J., concurring in judgment).  Whichever provision provides its source, it means that a State simply may not force a lawyer upon a criminal defendant who wishes to conduct his own defense.  *Faretta*, 422 U. S., at 807.

Exercising the right of self-representation requires waiving the right to counsel.  A defendant may represent himself only when he "'knowingly and intelligently'" waives the lawyer's assistance that is guaranteed by the

Sixth Amendment. *Id.,* at 835. He must "be made aware of the dangers and disadvantages of self-representation," and the record must "establish that 'he knows what he is doing and his choice is made with eyes open.'" *Ibid.* (quoting *Adams* v. *United States ex rel. McCann*, 317 U. S. 269, 279 (1942)). This limitation may be relevant to many mentally ill defendants, but there is no dispute that Edwards was not one of them. Edwards was warned extensively of the risks of proceeding *pro se*. The trial judge found that Edwards had "knowingly and voluntarily" waived his right to counsel at his first trial, App. 512a, and at his second trial the judge denied him the right to represent himself only by "carv[ing] out" a new "exception" to the right beyond the standard of knowing and voluntary waiver, *id.,* at 527a.

When a defendant appreciates the risks of forgoing counsel and chooses to do so voluntarily, the Constitution protects his ability to present his own defense even when that harms his case. In fact waiving counsel "usually" does so. *McKaskle* v. *Wiggins*, 465 U. S. 168, 177, n. 8 (1984); see also *Faretta*, 422 U. S., at 834. We have nonetheless said that the defendant's "choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'" *Ibid.* What the Constitution requires is not that a State's case be subject to the most rigorous adversarial testing possible—after all, it permits a defendant to eliminate *all* adversarial testing by pleading guilty. What the Constitution requires is that a defendant be given the right to challenge the State's case against him using the arguments *he* sees fit.

In *Godinez,* 509 U. S. 389, we held that the Due Process Clause posed no barrier to permitting a defendant who suffered from mental illness both to waive his right to counsel and to plead guilty, so long as he was competent to stand trial and knowingly and voluntarily waived trial and the counsel right. *Id.*, at 391, 400. It was "never the

rule at common law" that a defendant could be competent to stand trial and yet incompetent to either exercise or give up some of the rights provided for his defense. *Id.*, at 404 (KENNEDY, J., concurring in part and concurring in judgment). We rejected the invitation to craft a higher competency standard for waiving counsel than for standing trial. That proposal, we said, was built on the "flawed premise" that a defendant's "competence to represent himself" was the relevant measure: "[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." *Id.*, at 399. We grounded this on *Faretta*'s candid acknowledgment that the Sixth Amendment protected the defendant's right to conduct a defense to his disadvantage. 509 U. S. at 399–400.

B

The Court is correct that this case presents a variation on *Godinez:* It presents the question not whether another constitutional requirement (in *Godinez*, the proposed higher degree of competence required for a waiver) limits a defendant's constitutional right to elect self-representation, but whether a State's view of fairness (or of other values) permits it to strip the defendant of this right. But that makes the question before us an easier one. While one constitutional requirement must yield to another in case of conflict, nothing permits a State, because of *its* view of what is fair, to deny a constitutional protection. Although "the purpose of the rights set forth in [the Sixth] Amendment is to ensure a fair trial," it "does not follow that the rights can be disregarded so long as the trial is, on the whole, fair." *United States* v. *Gonzalez-Lopez,* 548 U. S. 140, 145 (2006). Thus, although the Confrontation Clause aims to produce fairness by ensuring the reliability of testimony, States may not provide for

unconfronted testimony to be used at trial so long as it is reliable. *Crawford* v. *Washington*, 541 U. S. 36, 61 (2004). We have rejected an approach to individual liberties that "'abstracts from the right to its purposes, and then eliminates the right.'" *Gonzalez-Lopez, supra*, at 145 (quoting *Maryland* v. *Craig*, 497 U. S. 836, 862 (1990) (SCALIA, J., dissenting)).

Until today, the right of self-representation has been accorded the same respect as other constitutional guarantees. The only circumstance in which we have permitted the State to deprive a defendant of this trial right is the one under which we have allowed the State to deny *other* such rights: when it is necessary to enable the trial to proceed in an orderly fashion. That overriding necessity, we have said, justifies forfeiture of even the Sixth Amendment right to be present at trial—if, after being threatened with removal, a defendant "insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Illinois* v. *Allen,* 397 U. S. 337, 343 (1970). A *pro se* defendant may not "abuse the dignity of the courtroom," nor may he fail to "comply with relevant rules of procedural and substantive law," and a court may "terminate" the self-representation of a defendant who "deliberately engages in serious and obstructionist misconduct." *Faretta, supra,* at 834–835, n. 46. This ground for terminating self-representation is unavailable here, however, because Edwards was not even allowed to begin to represent himself, and because he was respectful and compliant and did not provide a basis to conclude a trial could not have gone forward had he been allowed to press his own claims.

Beyond this circumstance, we have never constrained the ability of a defendant to retain "actual control over the case he chooses to present to the jury"—what we have termed "the core of the *Faretta* right." *Wiggins, supra*, at

178. Thus, while *Faretta* recognized that the right of self-representation does not bar the court from appointing standby counsel, we explained in *Wiggins* that "[t]he *pro se* defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in *voir dire,* to question witnesses, and to address the court and the jury at appropriate points in the trial."  465 U. S., at 174.  Furthermore, because "multiple voices 'for the defense'" could "confuse the message the defendant wishes to convey," *id.*, at 177, a standby attorney's participation would be barred when it would "destroy the jury's perception that the defendant is representing himself," *id.*, at 178.

As I have explained, I would not adopt an approach to the right of self-representation that we have squarely rejected for other rights—allowing courts to disregard the right when doing so serves the purposes for which the right was intended.   But if I were to adopt such an approach, I would remain in dissent, because I believe the Court's assessment of the purposes of the right of self-representation is inaccurate to boot.  While there is little doubt that preserving individual "'dignity'" (to which the Court refers), *ante,* at 11, is paramount among those purposes, there is equally little doubt that the loss of "dignity" the right is designed to prevent is *not* the defendant's making a fool of himself by presenting an amateurish or even incoherent defense.  Rather, the dignity at issue is the supreme human dignity of being master of one's fate rather than a ward of the State—the dignity of individual choice.   *Faretta* explained that the Sixth Amendment's counsel clause should not be invoked to impair "'the exercise of [the defendant's] free choice'" to dispense with the right, 422 U. S., at 815 (quoting *Adams*, 317 U. S., at 280); for "whatever else may be said of those who wrote the Bill of Rights, surely there can be no doubt that they understood the inestimable worth of free choice,"

422 U. S., at 833–834. Nine years later, when we wrote in *Wiggins* that the self-representation right served the "dignity and autonomy of the accused," 465 U. S., at 177, we explained in no uncertain terms that this meant according every defendant the right to his say in court. In particular, we said that individual dignity and autonomy barred standby counsel from participating in a manner that would "destroy the jury's perception that the defendant is representing himself," and meant that "the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury." *Id.*, at 178. In sum, if the Court is to honor the particular conception of "dignity" that underlies the self-representation right, it should respect the autonomy of the individual by honoring his choices knowingly and voluntarily made.

A further purpose that the Court finds is advanced by denial of the right of self-representation is the purpose of assuring that trials "appear fair to all who observe them." *Ante*, at 11. To my knowledge we have never denied a defendant a right simply on the ground that it would make his trial appear less "fair" to outside observers, and I would not inaugurate that principle here. But were I to do so, I would not apply it to deny a defendant the right to represent himself when he knowingly and voluntarily waives counsel. When Edwards stood to say that "I have a defense that I would like to represent or present to the Judge," App. 523a, it seems to me the epitome of both actual and apparent unfairness for the judge to say, I have heard "your desire to proceed by yourself and I've denied your request, so your attorney will speak for you from now on," *id.*, at 530a.

## III

It may be that the Court permits a State to deprive mentally ill defendants of a historic component of a fair trial because it is suspicious of the constitutional footing of

the right of self-representation itself. The right is not explicitly set forth in the text of the Sixth Amendment, and some Members of this Court have expressed skepticism about *Faretta'*s holding. See *Martinez, supra*, at 156–158 (questioning relevance of historical evidence underlying *Faretta'*s holding); 528 U. S., at 164 (BREYER, J., concurring) (noting "judges closer to the firing line have sometimes expressed dismay about the practical consequences" of the right of self-representation).

While the Sixth Amendment makes no mention of the right to forgo counsel, it provides the defendant, and not his lawyer, the right to call witnesses in his defense and to confront witnesses against him, and counsel is permitted to assist in "*his* defence" (emphasis added). Our trial system, however, allows the attorney representing a defendant "full authority to manage the conduct of the trial"—an authority without which "[t]he adversary process could not function effectively." *Taylor* v. *Illinois*, 484 U. S. 400, 418 (1988); see also *Florida* v. *Nixon,* 543 U. S. 175, 187 (2004). We have held that "the client must accept the consequences of the lawyer's decision to forgo cross-examination, to decide not to put certain witnesses on the stand, or to decide not to disclose the identity of certain witnesses in advance of trial." *Taylor*, *supra*, at 418. Thus, in order for the defendant's right to call his own witnesses, to cross-examine witnesses, and to put on a defense to be anything more than "a tenuous and unacceptable legal fiction," a defendant must have consented to the representation of counsel. *Faretta, supra,* at 821. Otherwise, "the defense presented is not the defense guaranteed him by the Constitution, for in a very real sense, it is not *his* defense." *Ibid.*

The facts of this case illustrate this point with the utmost clarity. Edwards wished to take a self-defense case to the jury. His counsel preferred a defense that focused on lack of intent. Having been denied the right to conduct

his own defense, Edwards was convicted without having had the opportunity to present to the jury the grounds he believed supported his innocence. I do not doubt that he likely would have been convicted anyway. But to hold that a defendant may be deprived of the right to make legal arguments for acquittal simply because a state-selected agent has made different arguments on his behalf is, as Justice Frankfurter wrote in *Adams, supra*, at 280, to "imprison a man in his privileges and call it the Constitution." In singling out mentally ill defendants for this treatment, the Court's opinion does not even have the questionable virtue of being politically correct. At a time when all society is trying to mainstream the mentally impaired, the Court permits them to be deprived of a basic constitutional right—for their own good.

Today's holding is extraordinarily vague. The Court does not accept Indiana's position that self-representation can be denied "'where the defendant cannot communicate coherently with the court or a jury,'" *ante*, at 12. It does not even hold that Edwards was properly denied his right to represent himself. It holds only that lack of mental competence can under some circumstances form a basis for denying the right to proceed *pro se*, *ante*, at 1. We will presumably give some meaning to this holding in the future, but the indeterminacy makes a bad holding worse. Once the right of self-representation for the mentally ill is a sometime thing, trial judges will have every incentive to make their lives easier—to avoid the painful necessity of deciphering occasional pleadings of the sort contained in the Appendix to today's opinion—by appointing knowledgeable and literate counsel.

Because I think a defendant who is competent to stand trial, and who is capable of knowing and voluntary waiver of assistance of counsel, has a constitutional right to conduct his own defense, I respectfully dissent.